## COLLEEN CURRAN *v.* AETNA CASUALTY AND SURETY COMPANY
### (14190)

SHEA, GLASS, COVELLO, BORDEN and BERDON, Js.

Argued February 20—decision released June 9, 1992

*David Thomas Ryan,* with whom were *Raymond T. DeMeo* and *Christopher Liebig,* for the appellant (plaintiff).

*Joseph F. Skelley, Jr.,* with whom, on the brief, was *Elizabeth A. Schumacher,* for the appellee (defendant).

GLASS, J. The principal issue in this appeal is whether an excess personal liability policy that provides uninsured motorist coverage[1] is subject to the equality requirement of General Statutes § 38-175c.[2] The plaintiff, Col-

---

[1] Throughout this opinion, the term uninsured motorist coverage encompasses underinsured motorist coverage as well.

[2] In 1991, General Statutes § 38-175a et seq. was recodified as § 38a-334 et seq. We shall refer herein to the former statutory section numbers, cross-referencing the new section numbers where appropriate. General Statutes § 38-175c (now § 38a-336) provides: "(a) (1) Every such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile lia-

leen Curran, claims that, pursuant to § 38-175c (a) (2), an excess personal liability policy issued to the plaintiff's father by the defendant, Aetna Casualty and Sur-

bility insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured. Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars.

"(2) *Notwithstanding any provision of this section to the contrary, every such policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112.* Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured.

"(b) (1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

"(2) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of this subsection." (Emphasis added.)

ety Company (Aetna), must provide uninsured motorist coverage equal to the liability limits of the policy. The trial court determined that because the excess personal liability policy provided that the insured maintain underlying automobile liability insurance, it was not required to provide uninsured motorist coverage under § 38-175c. Relying on our decision in *Mass* v. *United States Fidelity & Guaranty Co.*, 222 Conn. 631, 610 A.2d 1185 (1992), we affirm the judgment of the trial court.

The facts are not in dispute. On April 22, 1987, the plaintiff was seriously injured when the automobile she was driving was struck head on by an automobile owned and operated by John F. Henry. The trial court found that the accident was caused by the negligence of Henry. Henry's insurance carrier paid the plaintiff $50,000, the full amount of Henry's automobile liability coverage. The automobile operated by the plaintiff was one of three automobiles owned by her father, Ward S. Curran (Curran), each of which was insured under an automobile liability insurance policy (primary policy) issued by Aetna. The plaintiff was an insured under the primary policy at the time of the accident. Although the personal injury liability limit was $300,000, Curran had in writing selected a lesser amount of uninsured motorist coverage. Separate premiums for liability, uninsured motorist, comprehensive and collision coverage were charged for each vehicle under the primary policy.

At the same time that Curran purchased the primary policy from Aetna, he also purchased an excess personal liability policy (excess policy), which provided personal liability coverage of $1,000,000. The excess policy also specifically provided a limit of $25,000 per occurrence for uninsured motorist coverage. The declarations to the excess policy required that the insured maintain "primary insurance" for automobile liability

coverage for "all automobiles owned by, leased to or regularly used by the insured" with limits of $300,000 per occurrence.[3] The excess policy provided that "[Aetna] will only pay for the amount of loss which is . . . above the required primary insurance limits; and . . . above any other insurance collectible for an occurrence." Curran paid a basic premium of $102 for the excess policy, which included "one auto and primary residence." He paid an additional premium of $40 for two "additional vehicles—designed for road use."[4]

After exhausting the personal injury liability coverage under Henry's automobile liability policy, the plaintiff sought uninsured motorist coverage under the primary policy. The stated uninsured motorist liability limit was $40,000, which, after the coverage for the three insured automobiles was "stacked,"[5] provided a total of $120,000 in uninsured motorist coverage. The $50,000 paid to the plaintiff under Henry's automobile liability policy was deducted from the $120,000 available under the primary policy. The plaintiff was also paid $5000 in basic reparations benefits pursuant to the primary policy. Aetna thus paid the plaintiff a total of $65,000 under the primary policy.

---

[3] The declarations also required the insured to maintain primary insurance with specified liability limits for comprehensive personal liability, watercraft liability, recreational vehicle liability and rental premises liability. The excess policy defined "primary insurance" as "the types of insurance policies shown on the Declarations that pay for a loss before this policy pays."

[4] Because Curran received a credit of $28, he paid a total premium of $114 for the excess policy during the relevant policy period.

[5] "Stacking refers to the ability of the insured, when covered by more than one insurance policy, to obtain benefits from a second policy on the same claim when recovery from the first policy alone would be inadequate. . . . Intra-policy stacking is the aggregation of the limits of liability for uninsured-motorist coverage of each car covered in one policy . . . ." (Citations omitted; internal quotation marks omitted.) *Nationwide Ins. Co. v. Gode*, 187 Conn. 386, 388–89 n.2, 446 A.2d 1059 (1982). Aetna does not dispute that the plaintiff was entitled to stack uninsured motorist coverage under the primary policy.

Thereafter, the plaintiff sought uninsured motorist benefits under the excess policy. Aetna maintained that its uninsured motorist liability under the excess policy did not exceed $25,000. The plaintiff commenced this action against Aetna, alleging, inter alia, breach of contract and a violation of applicable Connecticut law in that Aetna had failed to provide uninsured motorist coverage equal to the liability limit of $1,000,000 in the excess policy. The plaintiff and Aetna filed motions for summary judgment on the legal issue of uninsured motorist coverage under the excess policy. The trial court reserved decision on these motions pending the jury's determination of damages for the plaintiff's injuries.

After a trial to a jury, the jury determined that fair, just and reasonable compensation for all of the plaintiff's injuries resulting from the accident was $300,000. During the course of the trial, Aetna filed an offer of judgment for $25,000. Thereafter, the trial court granted Aetna's motion for summary judgment, holding that the excess policy was not subject to the requirements of § 38-175c. Accordingly, the trial court rendered judgment for the plaintiff in the amount of $25,000. The plaintiff subsequently filed a motion to set aside the jury's verdict, which the trial court denied. This appeal to the Appellate Court followed. We transferred the appeal to this court pursuant to Practice Book § 4023. Thereafter, in response to this court's order for articulation, the trial court issued a supplemental memorandum of decision, in which it concluded that the $25,000 of uninsured motorist coverage provided by the excess policy was not subject to stacking.

On appeal, the plaintiff raises the following issues: (1) whether § 38-175c (a) (2) is applicable to and governs the automobile coverage in the excess policy issued by Aetna; (2) whether excess liability insurance policies

that provide uninsured motorist coverage are exempt from the equality requirement of § 38-175c (a) (2); (3) whether the trial court properly determined that uninsured motorist coverage under the excess policy cannot be stacked; (4) whether the trial court's evidentiary rulings and jury charge on issues relating to the nature and extent of the plaintiff's injuries were proper; and (5) whether the trial court's evidentiary rulings and jury charge on issues relating to the amounts received by the plaintiff from collateral sources were proper.

I

The plaintiff's first and second claims may be treated as one issue: whether the trial court properly concluded that the uninsured motorist coverage in the excess policy was not subject to the equality requirement of § 38-175c. In ruling on the parties' motions for summary judgment, the trial court concluded that because the excess policy contained an "underlying insurance requirement," it was not required to provide uninsured motorist coverage in accordance with § 38-175c. We agree.

Pursuant to § 38-175c (a) (2), an insurer is required to provide an insured with uninsured motorist coverage equal to the amount of automobile liability coverage purchased unless the insured requests a lesser amount in writing, although in no event may an insured elect less than the statutory minimum set forth in General Statutes § 14-112 (a).[6] The plaintiff argues that

---

[6] General Statutes § 14-112 (a) provides in pertinent part: "To entitle any person to receive or retain a motor vehicle operator's license or a certificate of registration of any motor vehicle when, in the opinion of the commissioner, such person has violated any of the provisions of section 14-222, section 14-224 or subsection (a) of section 14-227a or any similar provision of the laws of any other state or any territory, or who has been convicted of, or has forfeited any bond taken for appearance for, or has received a suspended judgment or sentence for, a violation of any of said provisions, or who has been held or found criminally responsible in connection with

because the excess policy covers liability for damages arising out of the ownership or use of Curran's three automobiles, it is an "automobile liability policy" within the meaning of § 38-175c and, therefore, must provide uninsured motorist coverage equal to the liability limit of $1,000,000. The plaintiff distinguishes this court's holding in *Cohn* v. *Pacific Employers Ins. Co.*, 213 Conn. 540, 569 A.2d 544 (1990), on the basis that the policy involved in that case was, by its terms, an *indemnity* policy, whereas the excess policy purchased by Curran provided *liability* coverage. In support of her argument, the plaintiff refers us to decisions in other jurisdictions holding that excess or umbrella policies must provide uninsured motorist coverage pursuant to the applicable uninsured motorist statute.[7]

In *Mass* v. *United States Fidelity & Guaranty Co.*, supra, we considered whether a personal excess policy that provided for liability and contained no provision for uninsured motorist coverage was an "automobile liability policy" within the meaning of § 38-175c. We stated that "excess or umbrella policies . . . serve a purpose distinct from that served by policies that exclu-

---

any motor vehicle accident resulting in the death of any person, or who has a record on file with the commissioner which is sufficient, in the opinion of the commissioner, to require evidence of financial responsibility for the reasonable protection of other persons, the commissioner shall require from such person proof of financial responsibility to satisfy any claim for damages by reason of personal injury to, or the death of, any one person, of twenty thousand dollars, or by reason of personal injury to, or the death of, more than one person on account of any accident, of at least forty thousand dollars, and for damage to property of at least ten thousand dollars . . . ."

[7] See *Aetna Casualty & Surety Co.* v. *Fulton*, 362 So. 2d 364 (Fla. App. 1978), cert. denied, 368 So. 2d 1361 (Fla. 1979); *Aetna Casualty & Surety Co.* v. *Green*, 327 So. 2d 65 (Fla. App. 1976), cert. denied, 336 So. 2d 1179 (Fla. 1976); *Bartee* v. *R.T.C. Transportation, Inc.*, 245 Kan. 499, 781 P.2d 1084 (1989); *Southern American Ins. Co.* v. *Dobson*, 441 So. 2d 1185 (La. 1983); *Duriak* v. *Globe American Casualty Co.*, 28 Ohio St. 3d 70, 502 N.E.2d 620 (1986); *Cincinnati Ins. Co.* v. *Siemens*, 16 Ohio App. 3d 129, 474 N.E.2d 655 (1984).

sively cover liability from damages arising out of the ownership, maintenance or operation of an automobile." Id., 640. Therefore, the fact that the Masses' excess policy provided, among other coverages, coverage for automobile liability did not convert it into an automobile liability policy within the meaning of § 38-175c. We concluded that the language of the personal excess policy indicated that it was intended as "excess insurance designed solely to protect [the Masses] from the infrequent occurrence of catastrophic judgments against [them.]" (Internal quotation marks omitted.) Id., 640. We are persuaded that the excess policy in the present case was intended to serve a similar purpose, and, accordingly, is not an automobile liability policy within the meaning of the uninsured motorist statute.

In contrast to the personal excess policy at issue in *Mass,* however, the excess policy in this case specifically provided coverage for uninsured motorist claims. Under the excess policy, Aetna agreed to pay for "personal injury sustained by an insured in an auto accident for which that insured has a legal right to recover from the owner or operator of an uninsured auto or an underinsured auto." The excess policy provided, however, that Aetna's "responsibility to pay is subject to the terms and conditions of the uninsured or underinsured motorists coverage in [the insured's] primary insurance policy." Pursuant to the excess policy, Aetna agreed to pay "the amount of loss in excess of the greater of either: (a) the total amount of insurance any insured is entitled to receive under any other uninsured, underinsured motorists or auto liability insurance; or (b) the minimum limit for bodily injury liability required by law in the state in which the accident occurs." The excess policy specifically excluded coverage for "any claim under the uninsured or underinsured motorists coverage for personal injury to any insured who does

not have any underlying uninsured or underinsured motorists insurance, *if such insurance was rejected by or for the insured,*" and "any uninsured or underinsured motorists personal injury claim not covered by the uninsured or underinsured motorists coverage contained in the primary insurance policies." (Emphasis added.) Finally, the excess policy provided that "[t]he limit of liability shown on the Declarations for this coverage is the most [Aetna] will pay for any one occurrence . . . regardless of the number of (a) insureds; (b) claims made; or (c) vehicles involved in the auto accident." The declarations to the excess policy limited Aetna's liability for uninsured motorist claims to $25,000 per occurrence after the deduction of a "retained limit."[8]

In *O'Hanlon* v. *Hartford Accident & Indemnity Co.,* 639 F.2d 1019 (3d Cir. 1981), the plaintiff sought reformation of an umbrella policy, denominated a "Personal Catastrophe Plan," that provided uninsured motorist coverage up to $35,000 after the deduction of a "retained limit." The United States Court of Appeals for the Third Circuit concluded that Delaware's uninsured motorist statute did not require the umbrella policy to provide uninsured motorist coverage equal to the statutory limits of $300,000. The court stated: "Policies such as the [insurer's] umbrella policy . . . with respect to their automobile coverages, would not exist but for underlying primary auto policies to which they provide excess liability insurance. Primary insurance policies . . . by their very existence, provide insureds with all the benefits accorded under [the uninsured motorist statute]. To place umbrella policies within the

---

[8] Pursuant to the excess policy, the "retained limit" is defined as the greatest of: (a) the minimum limits of primary insurance the insured must maintain, as indicated in the declarations; or (b) the total limits of the primary insurance policies or other insurance available that apply to the occurrence.

ambit of [the uninsured motorist statute] would be to apply that section to require [uninsured motorist] coverage in addition to that provided by primary policies. We do not believe that [the uninsured motorist statute] can be so read, and hold that it is not applicable to policies that provide excess liability insurance." Id., 1027.

Like the umbrella policy at issue in *O'Hanlon*, the excess policy in this case expressly limited the amount of uninsured motorist coverage. The excess policy required the insured to maintain underlying primary insurance coverage for automobile liability with limits of $300,000 per occurrence. Moreover, the excess policy effectively required the insured to maintain uninsured motorist coverage in that it excluded coverage for uninsured motorist claims if the insured had rejected uninsured motorist coverage under the primary policy or if the primary policy did not cover the particular claim. Curran obtained the requisite primary automobile liability coverage, but selected uninsured motorist coverage of only $40,000 per accident, as permitted by § 38-175c (a) (2).[9]

The excess policy, by its terms, provided coverage for specified catastrophic liability risks over and above

---

[9] In an affidavit submitted with the plaintiff's motion for summary judgment, Curran acknowledged having elected a limit of $40,000 of uninsured motorist coverage under the primary policy. In addition, the following colloquy took place between Elizabeth Schumacher, counsel for Aetna, and Curran during the latter's deposition that was presented to the trial court on the plaintiff's motion for summary judgment:

"Q. You signed at the time you applied for the underlying automobile policy a document which has been marked here as Exhibit 1, a form in which you elected forty thousand dollars uninsured-underinsured motorist coverage on the three cars that you owned at that time, correct?

"A. That is correct.

"Q. Which was a lower amount than the liability limit that you were purchasing under that policy, correct?

"A. That is correct."

the primary or underlying insurance risk.[10] The limitation of uninsured motorist coverage to $25,000 in the excess policy did not affect Aetna's obligation, pursuant to § 38-175c, to provide uninsured motorist coverage equal to liability coverage in the primary policy.[11] Curran, however, waived the equality requirement of § 38-175c (a) (2) when he purchased reduced uninsured motorist coverage under the primary policy. Because we conclude that the excess policy is not an automobile liability policy within the meaning of § 38-175c, the parties were free to contract for uninsured motorist coverage under the excess policy without regard to the statutory requirements. We are persuaded that the primary policy provided the plaintiff with all the benefits accorded her by § 38-175c, and, therefore, that the statute had been satisfied before the plaintiff sought uninsured motorist coverage under the excess policy.

---

[10] The terms of the excess policy specifically provided: "The coverage provided by this policy is always excess over any other collectible insurance which covers personal injury or property damage also covered by this policy. This applies whether the other insurance is stated to be primary, contributing, excess or contingent."

[11] The plaintiff argues that because the uninsured motorist coverage in the excess policy is expressly "subject to" the terms and conditions of the primary policy, the excess policy should be construed as an automobile liability policy pursuant to General Statutes § 38-175c. The fact that the excess policy refers to the required primary policy, however, no more converts the excess policy to an automobile liability policy than the reference to underlying homeowners' insurance converts the excess policy to a homeowners' policy. In *Matarasso* v. *Continental Casualty Co.*, 82 App. Div. 2d 861, 862, 440 N.Y.S.2d 40 (1981), aff'd, 56 N.Y.2d 264, 436 N.E.2d 1305, 451 N.Y.S.2d 703 (1982), the Appellate Division of the Supreme Court of New York concluded that the insured's umbrella policy incorporated the provisions of an underlying automobile liability policy "insofar as they provide for protection against liability for damages to third parties," and, therefore, did not incorporate underlying uninsured motorist coverage because such coverage did not involve third party claims against the insured. We are similarly persuaded in the present case that "[a]ny other interpretation would distort the actual purpose of the [excess] policy."

## II

The plaintiff also claims that the trial court improperly concluded that the uninsured motorist coverage provided by the excess policy was not subject to stacking. Aetna argues that the trial court's conclusion was correct because the excess policy is not an automobile liability policy under § 38-175c. Our disposition of the plaintiff's first two claims leaves only the question of whether the $25,000 of uninsured motorist coverage specifically provided by the excess policy may be stacked. We conclude that because the excess policy is not an automobile liability policy within the meaning of § 38-175c, the doctrine of stacking does not apply.

Intrapolicy stacking is the aggregation of the limits of liability for uninsured motorist coverage of each automobile covered under one insurance policy. *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 388–89 n.2, 446 A.2d 1059 (1982). This court has permitted intrapolicy stacking where each of several vehicles insured pursuant to one policy was separately described and individual premiums were charged for uninsured motorist coverage of each vehicle. See, e.g., *Dixon* v. *Empire Mutual Ins. Co.,* 189 Conn. 449, 453, 456 A.2d 335 (1983); *Nationwide Ins. Co.* v. *Gode,* supra, 394–97; *Safeco Ins. Co.* v. *Vetre,* 174 Conn. 329, 333–35, 387 A.2d 539 (1978). While § 38-175c does not expressly address stacking, we have repeatedly held that the statute does not prohibit aggregation of coverage. *Cohn* v. *Aetna Ins. Co.,* 213 Conn. 525, 529, 569 A.2d 541 (1990).

The rationale behind permitting stacking derives in large part from the reasonable expectations of the parties to the insurance contract. " '[W]hen the named insured purchases uninsured motorist coverage on more than one automobile, he intends to buy extra protection for himself and his family, regardless of whether

his injury occurs in any one of his insured vehicles or elsewhere.' '' Id., 529–30. We have limited stacking of uninsured motorist coverage, however, to insurance policies that provide coverage exclusively for automobile liability, and thus fall within the ambit of § 38-175c.[12] See *Nicolletta* v. *Nationwide Ins. Co.,* 211 Conn. 640, 560 A.2d 964 (1989); *Dixon* v. *Empire Mutual Ins. Co.,* supra; *Nationwide Ins. Co.* v. *Gode,* supra; *Safeco Ins. Co.* v. *Vetre,* supra. We discern no persuasive reason to permit the stacking of uninsured motorist coverage under excess or umbrella policies, such as the policy in the present case, when we have held that such policies are not governed by § 38-175c.[13]

The trial court awarded the plaintiff $25,000 in uninsured motorist coverage pursuant to the excess policy.

---

[12] This court has drawn the line at "fleet" automobile liability policies, however, concluding that stacking was not within the reasonable expectations of the parties to the insurance contract despite the insured's payment of a separate uninsured motorist premium for each covered vehicle. *Chmielewski* v. *Aetna Casualty & Surety Co.,* 218 Conn. 646, 671, 591 A.2d 101 (1991); *Cohn* v. *Aetna Ins. Co.,* 213 Conn. 525, 530, 569 A.2d 541 (1990).

[13] The plaintiff contends that whether uninsured motorist coverage may be stacked should depend on the reasonable expectations of the parties to the insurance contract, not whether the contract is an automobile liability policy pursuant to General Statutes § 38-175c. The plaintiff argues that because additional premiums for two extra vehicles were paid under the excess policy, the insured could reasonably have expected that uninsured motorist coverage would be stacked. By its terms, however, the excess policy covers liability of the insured to third parties after primary policy liability limits have been exhausted. Furthermore, in deposition testimony that was presented to the trial court on Aetna's motion for summary judgment, Curran acknowledged that the insurance agent who sold him the primary and excess policies represented that the $25,000 of uninsured motorist coverage in the excess policy was an "extra." Finally, unlike the primary policy's declarations, which described each automobile covered and indicated the uninsured motorist premium for each, the declarations to the excess policy did not designate the additional premium charged or a portion thereof for uninsured motorist coverage of the two extra vehicles. In light of the foregoing evidence, we are satisfied that the reasonable expectations of the insured are not frustrated by our decision not to permit stacking under the excess policy in this case.

The defendant had filed an offer of judgment for this amount. In addition, it is undisputed that the plaintiff has received the total amount of uninsured motorist coverage available to her under the primary policy. Because § 38-175c (b) (1) limits Aetna's liability to the amount of uninsured motorist coverage available; see footnote 2, supra; we need not address the plaintiff's other claims.

The judgment is affirmed.

In this opinion SHEA, COVELLO and BORDEN, Js., concurred.

BERDON, J., dissenting in part and concurring in part. I disagree with the majority in part I of its opinion. The excess liability policy is clearly an automobile liability policy and subject to the mandatory uninsured motorist coverage under General Statutes § 38-175c (now recodified as § 38a-336). See *Mass* v. *United States Fidelity & Guaranty Co.*, 222 Conn. 631, 650–56, 610 A.2d 1185 (1992) (*Berdon, J.,* dissenting).

In regard to part II of the decision, although I agree that pursuant to the terms of *this* excess liability policy there is no stacking, it is *not* because the policy fails to come within the mandatory uninsured motorist coverage under § 38-175c. Rather, I agree that there was no expectation of stacking on the part of the insured because the contractual uninsured motorist coverage in this case fails to describe separately the automobiles and assess individual premiums. See *Dixon* v. *Empire Mutual Ins. Co.*, 189 Conn. 449, 453, 456 A.2d 335 (1983); *Nationwide Ins. Co.* v. *Gode*, 187 Conn. 386, 396, 446 A.2d 1059 (1982).

Accordingly, I dissent in part I and concur in the result in part II.