[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Files July 3, 1997
STATEMENT OF THE CASE
On January 16, 1997, Teresa and Barry Rubinson [the Rubinsons], filed an application seeking an order directing State Farm Fire Casualty Co. [State Farm] to proceed with arbitration under the Rubinsons' underinsured/uninsured motorist coverage issued by State Farm as part of a Personal Liability Umbrella Policy. ["Umbrella Policy"]. In response, State Farm maintains that the Umbrella Policy does not cover the claim and that State Farm is not required to arbitrate any coverage issues. The court issued a decision on June 20, 1997 denying the Rubinson's application to compel arbitration.
According to the Rubinson's application, on February 22, 1994, Teresa Rubinson, while attempting to avoid a collision with a motor vehicle driven by an unknown motorist, swerved into a pole causing her to sustain injuries. Barry Rubinson, as a result of the injuries sustained by his spouse, suffered a loss of consortium. As a result of the accident and these injuries, the Rubinsons asserted an uninsured motorist claim under their primary or underlying automobile insurance policy. They also asserted a claim under the Umbrella Policy at issue here. Both policies were issued by State Farm. In response to the Rubinsons' claim under the Umbrella policy, State Farm denied coverage on the ground that there was no contact or collision between the Rubinsons' insured vehicle and the unidentified vehicle. The CT Page 7587 Rubinsons' demanded arbitration of this dispute, and when State Farm refused, this action was instituted seeking an order compelling arbitration.
The Rubinsons' Umbrella Policy provides coverage for uninsured motorist claims. In the policy, an "uninsured motor vehicle" is defined, inter alia, as "a `hit-and-run' land motor vehicle whose owner remains unknown and which strikes: a) you; or b) the vehicle you are occupying; and causes bodily injury to you." (State Farm's Exhibit B.)[1]
The Umbrella Policy also imposed conditions on the uninsured motorist coverage which include the following: "(1) [The Rubinsons] must maintain underlying limits for uninsured motorvehicle coverage equal to the limits listed in the Declarations.
If these underlying limits are not maintained, this coverage will not apply[;] (2) [t]he retained limit for [the uninsured motorist coverage] is the total amount received for the loss from or on behalf of the liable party plus the amount received from your underlying coverage, but not less than the amount of your required limits[;] (3) [State Farm] will pay only the amount in excess of the retained limit up to the [uninsured motorist] limit per loss[;] (4) [t]his coverage will apply only when damages were paid by or on behalf of the liable party or there is payment by your underlying coverage[;] (5) [t]his coverage will apply in accordance with the terms and conditions of your underlyinguninsured motorist coverage." (Emphasis in original). (State Farm's Exhibit B). According to the Rubinsons' submission, the underlying automobile insurance policy contains a rider acknowledging that additional uninsured motorist coverage is to be provided by the Umbrella Policy and sets forth the conditions of the Umbrella Policy in language similar to that contained in the Umbrella policy. (Rubinsons' Exhibit A.).
The Umbrella Policy does not have an arbitration clause. The Umbrella Policy, however, does provide the following, in relevant part, in a section entitled "Suit Against Us": "No action shall be brought against us [State Farm] unless you [the Rubinsons] have complied with policy provisions. . . . No action shall be brought against us until your obligation has been set by final judgment or agreement with us." (State Farm's Exhibit B, p. 7).
The underlying automobile insurance policy does have an arbitration provision which states that the Rubinsons' entitlement to damages and the amount of any such damages shall CT Page 7588 be decided by arbitration on the written request of the Rubinsons.
DISCUSSION
 I
The Rubinsons first argue that they are entitled to arbitrate their coverage dispute on the ground that the Umbrella Policy includes or incorporates the arbitration provision of the automobile liability policy, and State Farm is therefore required to submit all coverage issues to arbitration.[2] The Rubinsons make this argument assuming, without any clear explanation, that the Umbrella Policy contains or incorporates the arbitration policy of the underlying automobile liability policy. This assumption does not find any persuasive support in the express language of these policies. Liability under the Umbrella Policy is dependent on the Rubinsons first exhausting all the uninsured motorist coverage of the automobile liability policy. This exhaustion may be accomplished through arbitration as provided under the automobile liability policy.
To support their argument, the Rubinsons further claim that the language of the Umbrella Policy is so ambiguous that the two policies must be viewed together as creating one uninsured motorist policy within the meaning of General Statutes §38a-336. The Rubinsons refer to the following language in the policy to support this position: "Option U will apply in accordance with the terms and conditions of your underlying Uninsured Motorist Coverage." Since this provision of the Umbrella Policy requires the Umbrella Policy to be interpreted in accordance with the terms of the automobile insurance policy, the Rubinsons claim that an ambiguity exists between the policies. More specifically, according to the Rubinsons, this ambiguity is created because as compared to the Umbrella Policy, the automobile insurance requires arbitration and does not have a contact requirement in its "hit-and-run" definition of an uninsured motor vehicle.
"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." (Internal quotation marks omitted.) Hansen v. Ohio Casualty InsuranceCompany, 239 Conn. 537, 542, 687 A.2d 1262 (1996). "The policy words must be accorded their natural and ordinary meaning." Id.
CT Page 7589 "Under well established rules of construction, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy."Id., 542-43. "This rule of construction may not be applied, however, unless the policy terms are indeed ambiguous." Id.
The language of the Umbrella Policy relied on by the Rubinsons is not so unclear or ambiguous that the Umbrella Policy must be construed as a primary uninsured motorist policy governed by General Statutes § 38a-336. In the context of the other conditions imposed on the Rubinsons under the Umbrella Policy, the language requiring this policy to be applied in accordance with the terms of the automobile insurance policy can only mean that the provisions of the underlying policy apply except as otherwise provided by the express provisions of the Umbrella Policy. For example, the conditions of the Rubinsons' Umbrella Policy expressly require that they maintain underlying uninsured motorist coverage. The Umbrella Policy also provides that its uninsured motorist benefits are only paid after exhaustion of the benefits provided under the underlying policy. In Curran v. AetnaCasualty Surety Co., 222 Conn. 657, 665, 610 A.2d 1198 (1992) the umbrella policy, which provided coverage for uninsured motorist claims, contained the following condition: the insurer's "responsibility to pay is subject to the terms and conditions of the uninsured or underinsured motorist coverage in [the insured's] primary insurance policy." (Internal quotation marks omitted). Despite the presence of such a condition, the Connecticut Supreme Court had no difficulty in finding that the policy in question was an excess policy and not an automobile liability policy within the meaning of General Statutes § 38-175c (now 38a-336). Id., 668. For these reasons, the policy issued by State Farm is clearly an umbrella policy containing uninsured motorist coverage and not, as the Rubinsons suggest, an ambiguously worded document that should be interpreted as being an automobile liability policy within the meaning of General Statutes § 38a-336.
The Connecticut Supreme Court's decision in Curran v. AetnaCasualty Surety Co., supra, is controlling. In Curran, the Supreme Court considered whether an excess personal liability policy that provides uninsured motorist coverage is subject to the equality requirement of General Statutes § 38-175c (now § 38a-336). Id., 658. In resolving this issue, the Supreme Court held that "the excess policy is not an automobile liability policy within the meaning of 38-175c," and the parties, CT Page 7590 therefore, "were free to contract for uninsured motorist coverage under the excess policy without regard to the statutory requirements." Id., 668; accord, O'Hanlon v. Hartford AccidentIndemnity. Co., 639 F.2d 1019 (3rd Cir. 1981).
The Rubinsons' Umbrella policy, like the policy in Curran,
requires the insured to maintain underlying uninsured motorist coverage. Additionally, State Farm's liability to the Rubinsons arises once the amount of the damages exceed the "retained limit." Therefore, similar to the insurance policy in Curran, the Rubinsons' umbrella policy excludes coverage for uninsured motorist benefits if the compensation received from the tortfeasor and the primary policy is sufficient to satisfy the full amount of their damages. Accordingly, the court finds that the Umbrella Policy is not an automobile liability policy within the meaning of General Statutes § 38a-336.
 II
Finally, the Rubinsons argue that any insurance policy, including an excess or umbrella policy, which provides uninsured motorist coverage that requires contact as a prerequisite for coverage is against public policy and, therefore, unenforceable. In Streitweiser v. Middlesex Mutual Assurance Co., 219 Conn. 371,375, 593 A.2d 498 (1991), the Connecticut Supreme Court found that although the insured was not entitled to coverage as a matter of contract law, "he [was] entitled to recover because of the public policy favoring uninsured motorist coverage as set forth § 38-175a-6(a) of the Regulations of Connecticut State Agencies." The Supreme Court's holding, however, was limited to "statutorily mandated uninsured motorist coverage." Id., 381. As discussed above, the uninsured motorist coverage issued to the Rubinsons by State Farm as part of their umbrella policy is not an automobile liability policy mandated by General Statutes §38a-336. Thus, Rubinsons now ask the court to extend the public policy articulated by the Connecticut Supreme Court inStreitweiser v. Middlesex Mutual Assurance Co., supra, to uninsured motorist coverage that is not statutorily mandated. The court declines this invitation.
The Rubinsons' primary argument is that the reasoning used by the court in Streitweiser to find that public policy precludes a physical contact requirement for statutorily mandated uninsured motorist coverage is also applicable to umbrella policies providing uninsured motorist coverage. See Streitweiser v.CT Page 7591Middlesex Mutual Assurance Co., supra, 219 Conn. 380-81. The fallacy of the Rubinsons' argument is that the public policy identified in Streitweiser is rooted in the regulatory scheme governing uninsured motorist insurance. Indeed, the Supreme Court's holding was limited to "statutorily mandated uninsured motorist coverage." (Emphasis added). Id., 381. Because umbrella or excess insurance is not statutorily mandated, such insurance is not controlled by the provisions or policies of the uninsured motorist regulatory scheme.
As held by the Court in Curran, an umbrella policy is not governed by the uninsured motorist statute, and therefore, the parties are free to contract for excess insurance "without regard to the statutory requirements." Curran v. Aetna Casualty Surety, Co, supra 222 Conn. 668. Under this reasoning, and these specific circumstances, if parties are free to contract for excess insurance without having to comply with the express
provisions of the statute, they may also contract for excess insurance without having to comply with the implied policies that emanate solely from these provisions. Contrary to the Rubinsons' argument, there is nothing inconsistent about requiring insurance policies mandated by the uninsured motorist statute to conform to both the express provisions and implicit policies of the statute, but not requiring such strict conformity for umbrella policies that are neither required nor governed by the statute.
CONCLUSION
Therefore, for all the foregoing reasons, the Rubinsons' application to compel arbitration is hereby denied.
STEVENS, J.