STUART COHN, CONSERVATOR (ESTATE OF JILL COHN)
*v.* AETNA INSURANCE COMPANY
(13615)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and COVELLO, Js.

Argued November 1, 1989—decision released January 30, 1990

*Winona W. Zimberlin,* for the appellant-appellee (defendant).

*Ira B. Grudberg,* with whom was *Alice S. Miskimin,* for the appellee-appellant (plaintiff).

COVELLO, J. This is an appeal from a judgment of the trial court confirming an $855,000 underinsured motorist arbitration award. The dispositive issue is whether coverage for underinsured motorists contained in a business automobile liability policy insuring a number of individually listed motor vehicles may be combined or "stacked" in determining the total amount of coverage available to a single claimant. We conclude that such a result is beyond the reasonable expectations of the parties to the insurance contract and that "stacking" is inappropriate in the context of fleet automobile liability policies. We therefore remand the matter to the trial court with direction to modify the award accordingly.

The relevant facts are as follows. On August 11, 1983, the defendant, Aetna Insurance Company, had in force a business automobile liability policy insuring twenty-two vehicles owned by Joseph Cohn & Son, Inc. The policy contained an endorsement providing uninsured motorist coverage in the amount of $40,000 for each vehicle. Each vehicle was separately listed on the policy. The policy also contained a separate schedule of premiums for each vehicle that included a $3 or $5 charge per vehicle for the $40,000 of uninsured motorist coverage. Joseph Cohn & Son, Inc., paid a total of $73 for the uninsured motorist coverage on all twenty-two vehicles. By the express terms of the policy, uninsured motorists were defined so as to include underinsured motorists.[1]

---

[1] The policy provided: " 'Uninsured motor vehicle' means a land motor vehicle . . . [f]or which the sum of all liability bonds or policies at

On August 11, 1983, the plaintiff's wife, Jill Cohn, while operating one of the insured automobiles, was severely injured in a collision at the intersection of Temple and Grove Streets in New Haven. The parties agreed that the damages suffered by Cohn as the result of her personal injuries were not less than $880,000. Transamerica Insurance Company, insurer of the other vehicle involved in the collision, paid the plaintiff $25,000, which was the full amount of its liability policy.

Unable to agree on the amount of underinsured motorist coverage available under the defendant's policy, the parties submitted the issue to arbitration. The arbitration panel concluded that there was $880,000 of underinsured motorist coverage available under the Aetna policy, having "stacked" $40,000 per vehicle for each of the twenty-two vehicles insured under the policy. The panel further concluded that the damages suffered by Cohn exceeded both the $25,000 limit of the tortfeasor's insurance and the $880,000 available under the Aetna policy. Finally, the panel directed the defendant to pay the plaintiff the sum of $855,000, having given the defendant a credit for the $25,000 paid by the tortfeasor's carrier.

The defendant filed an application in Superior Court to set aside the arbitration award pursuant to General Statutes § 52-418.[2] The trial court, *Hodgson, J.,* confirmed the award and rendered judgment for the plaintiff to recover $855,000 plus interest and costs. The defendant appealed to the Appellate Court and the

the time of an accident provides at least the amounts required by the applicable law where a covered auto is principally garaged but their limits are less than the limit of this insurance . . . ."

[2] General Statutes § 52-418 provides: "(a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any one of the following defects . . . (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

plaintiff cross appealed.[3] We thereafter transferred the matter to ourselves pursuant to Practice Book § 4023.

This court has, upon several occasions, considered the applicability of "stacking" principles to a variety of factual circumstances. We have recognized the "stacking" of uninsured motorist coverages in situations involving separate and distinct policies that were both applicable to a given claim (interpolicy "stacking"). *Safeco Ins. Co.* v. *Vetre,* 174 Conn. 329, 333–35, 387 A.2d 539 (1978); *Pecker* v. *Aetna Casualty & Surety Co.,* 171 Conn. 443, 452–53, 370 A.2d 1006 (1976); but see *Fidelity & Casualty Co.* v. *Darrow,* 161 Conn. 169, 286 A.2d 288 (1971). We have also sanctioned the "stacking" of uninsured motorist coverage where a number of vehicles insured under one policy were separately described and individual premiums were charged for each vehicle (intrapolicy "stacking"). *Dixon* v. *Empire Mutual Ins. Co.,* 189 Conn. 449, 453, 456 A.2d 335 (1983); *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 394–97, 446 A.2d 1059 (1982); *Safeco Ins. Co.* v. *Vetre,* supra.

We have rejected attempts to limit "stacking" principles to different classifications of covered individuals,

---

[3] On appeal, the defendant claims: (1) that it was entitled to a de novo review by the trial court of all legal and factual issues including its claim that it never consented to the plaintiff's settlement with the actual tortfeasor, an issue not addressed by the trial court; (2) that the trial court made an erroneous factual determination that a separate premium was paid or required to be paid by Joseph Cohn & Son, Inc., for each vehicle; (3) that the trial court erred in concluding that General Statutes § 38-175c requires "stacking" of uninsured motorist coverage in the context of fleet policies; (4) that the trial court erred in concluding that "stacking" is allowed for Class Two Insureds; and (5) that the trial court erred in concluding that the consent to settlement requirement contained in the policy did not apply to *underinsured* motorist claims. The plaintiff cross appealed contending that the trial court erred in not awarding interest from the date that the arbitration award was entered. In view of our disposition of the principal issue concerning the "stacking" of fleet coverage, we need not address these other claims.

rejecting the notion that there is a contractual distinction between the "named insured" and vehicle "occupants." *Allstate Ins. Co.* v. *Ferrante,* 201 Conn. 478, 484–88, 518 A.2d 373 (1986). We have also uniformly rejected attempts to reduce uninsured motorist coverage through explicit policy language, except within the narrow context of the exceptions permitted under § 38-175a-6 of the Regulations of Connecticut State Agencies.[4] *Nicolletta* v. *Nationwide Ins. Co.,* 211 Conn. 640, 645–46, 560 A.2d 964 (1989); *Allstate Ins. Co.* v. *Ferrante,* supra, 483–84.

While General Statutes § 38-175c, the uninsured motorist statute, does not specifically address the issue of "stacking" coverage, we have repeatedly held that a fair reading of the statute discloses no prohibition against such aggregations. *Allstate Ins. Co.* v. *Ferrante,* supra, 481–82; *Dixon* v. *Empire Mutual Ins. Co.,* supra; *Nationwide Ins. Co.* v. *Gode,* supra, 394–97; *Safeco Ins. Co.* v. *Vetre,* supra; *Pecker* v. *Aetna Casualty & Surety Co.,* supra, 447–53. The reason for this is the common sense notion that such a result falls within the reasonable expectations of the parties to the insurance contract. As one court has observed: "Stacking is derived from the presumption that when the named

[4] Section 38-175a-6 of the Regulations of Connecticut State Agencies provides in relevant part: "MINIMUM PROVISION FOR PROTECTION AGAINST UNINSURED MOTORISTS . . . . (d) LIMITS OF LIABILITY. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of § 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury, (2) paid or are payable under any workers' compensation or disability benefits law, or (3) paid under the policy in settlement of a liability claim. The policy may also provide that any direct indemnity for medical expense paid or payable under the policy or any amount of any basic reparations benefits paid or payable under the policy will reduce the damages which the insured may recover under this coverage and any payment under these coverages shall reduce the company's obligation under the bodily injury liability coverage to the extent of the payment."

insured purchases uninsured motorist coverage on more than one automobile, he intends to buy extra protection for himself and his family, regardless of whether his injury occurs in any one of his insured vehicles or elsewhere." *Travelers Ins. Co.* v. *Pac*, 337 So. 2d 397, 398 (Fla. App. 1976). " ' "This is particularly true when each of the insured vehicles is separately described, the coverage granted under the policy is separately listed for each vehicle, and a separate premium is charged for the coverage afforded to each of the described vehicles." See also *Tucker* v. *Government Employees Ins. Co.*, 288 So. 2d 238 (Fla. 1973).' *Safeco Ins. Co.* v. *Vetre*, supra, 334." *Nationwide Ins. Co.* v. *Gode*, supra, 395. " 'Where two premiums are paid for two vehicles, whether in one policy or two, total coverage for the named insured is doubled since a person can reasonably expect double coverage when he pays double premiums.' *Yacobacci* v. *Allstate Ins. Co.*, [33 Conn. Sup. 229, 231, 372 A.2d 987 (1976)]." *Nationwide Ins. Co.* v. *Gode*, supra, 396.

The notion of "stacking" as an objectively reasonable expectation of the parties does not, however, extend to fleet insurance contracts. In using the phrase "fleet insurance contracts" we specifically refer to any insurance policy designated as a "fleet" or "garage" policy, or any insurance policy covering a number of vehicles owned by a business, a governmental entity, or an institution. See 25 A.L.R.4th 896 (1983).

"It is obvious that an individual who applies for and receives a liability policy covering his two automobiles would expect to collect the coverage he paid for on both automobiles if anything happened to him or a member of his family. On the contrary, it is not credible that a company or an employee of a company having a fleet of . . . vehicles would reasonably expect the coverage on the vehicle the employee happened to be occupying at the time of the collision with an uninsured [or

underinsured] motorist to be [a multiple of the total number of vehicles in the fleet] . . . ." *Linderer* v. *Royal Globe Ins. Co.,* 597 S.W.2d 656, 661 (Mo. App. 1980). In the present case, the arbitration panel multiplied twenty-two vehicles times $40,000 to determine that there was $880,000 in underinsured motorist coverage available to one claimant in one vehicle. This of course would have to mean that there was $880,000 of such coverage for each of the twenty-two vehicles comprising the fleet. This produces the unlikely result that the principals of Joseph Cohn & Son, Inc., and Aetna Insurance Company contemplated that Joseph Cohn & Son, Inc., was purchasing $19,360,000 worth of uninsured or underinsured motorist coverage for a premium of $73. " 'Clearly such an expectation would not have been a reasonable one under the terms of the commercial fleet policy here in question.' " *Ohio Casualty Ins. Co.* v. *Stanfield,* 581 S.W.2d 555, 559 (Ky. 1979), quoting *Lambert* v. *Liberty Mutual Ins. Co.,* 331 So. 2d 260, 265 (Ala. 1976); see also *Burns* v. *Fernandez,* 401 So. 2d 1033, 1037–38 (La. App. 1981); *Howell* v. *Harleysville Mutual Ins. Co.,* 305 Md. 435, 439–42, 505 A.2d 109 (1986); *Miller* v. *Royal Ins. Co.,* 354 Pa. Super. 20, 23, 510 A.2d 1257 (1986), aff'd, 517 Pa. 306, 535 A.2d 1049 (1988); *Cunningham* v. *Ins. Co. of North America,* 213 Va. 72, 79, 189 S.E.2d 832 (1972); *Thompson* v. *Grange Ins. Assn.,* 34 Wash. App. 151, 157–59, 660 P.2d 307 (1983); *Continental Casualty Co.* v. *Darch,* 27 Wash. App. 726, 731, 620 P.2d 1005 (1980).

The claim that the insured has paid for underinsured motorist protection that he is now denied when fleet "stacking" is not allowed is also without merit. The separate coverage on each of the other vehicles in the fleet continues in effect. Thus, the insured gets exactly what he paid for, i.e., in this case, $40,000 of coverage on any one vehicle in consideration of a $3 to $5 pre-

mium paid for each vehicle. If $40,000 of coverage is considered inadequate, the appropriate response is simply to buy more coverage.

There is error, the matter is remanded to the trial court with direction to vacate the judgment and to modify the arbitration award to reflect underinsured motorist coverage in the amount of $40,000.

In this opinion the other justices concurred.