[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF TRANSAMERICA INSURANCE COMPANY'SAPPLICATION TO VACATE AND/OR CORRECT ARBITRATION AWARD
This court heard the above-referenced case, an application by Transamerica Insurance Company to vacate and/or correct an arbitration award together with Docket #CV 95-0381367-S, Lawrence Panza, Jr. v.Transamerica Insurance Company, an application by Lawrence Panza to make different modifications to the same arbitration award.
For the sake of clarity, the court at the outset will set forth the entire arbitration award and the view which each of the parties takes of what the award should have been. Some of the issues between the parties are raised in this case and some are raised in #CV 95-0381367-S.
On May 6, 1995, in an arbitration award, a three-member arbitration panel entered an interim decision which stated:
 "We, the arbitrators, duly sworn, hereby make the following finding: 1. that the coverage under the Transamerica Insurance policy in the above captioned case is $2,000,000."
That award was signed by arbitrators Daniel D. Portanova and Joseph S. Dobrowolski. It was not signed by arbitrator Robert W. Allen who dissented from the decision and, in effect, found that the uninsured motorist coverage was $1,000,000. The issue decided by the arbitrators on May 6th is the issue presented in the present case. That issue was whether CT Page 1353-E underinsured motorist coverage in the amount of $1,000,000 on each of two cars could be stacked to produce $2,000,000 in coverage. The insured argued that stacking was appropriate while the insurance company argued that stacking was inappropriate. The issue ultimately revolved around whether the policy in question was a fleet policy or a family policy.
On November 6, 1995, the arbitrators rendered a final decision on the matter. That decision may be summarized as follows:
Available underinsured coverage $2,000,000.
Credit for payment from liability carrier $100,000.
 Credit for basic reparations benefit received $96,667 ($100,000 Extended Basic Reparations Benefit — $3,333 previously paid).
Damages incurred $1,550,000.
Net award $1,353,333.
The insurance company's view of the final result would read as follows:
Coverage $1,000,000 (no stacking).
Damage incurred $1,555,000.
Credit for liability payment $100,000.
Credit for basic reparations benefit $96,666.
Net award $803,333.
The insured claimant's view of the matter would read as follows
Underinsured motorist coverage $2,000,000.
Damage incurred $1,550,000.
Credit for basic reparations benefit payback $3,333.
Credit for liability proceeds received $100,000.
Net award $1,446,667. CT Page 1353-F
The instant case clearly presents the issue to the court of whether or not the available coverage is $1,000,000 or whether stacking is appropriate so the available coverage is $2,000,000. That issue will be addressed in this opinion. The issue of the credit for the liability payment appears to be uncontested. A number of issues surrounding the credit and the amount of the credit for the basic reparations benefit will be addressed in Panza v. Transamerica Insurance Company,
Docket No. CV 95-0381367-S.
FACTS
Lawrence Panza, Jr. was injured in an automobile accident which occurred in Hamden, Connecticut, on April 2, 1988. As a result of the accident, the plaintiff received no-fault benefits and thereafter asserted an underinsured motorist claim under a Transamerica Insurance Company policy issued to the Audubon Copy Shoppe, Inc., as the named insured. The subject policy, at least at the outset, was a business automobile policy which covered two vehicles owned by the corporate insured.
Lawrence Panza, Sr. purchased this policy to provide automobile insurance for his business and his family. It is undisputed that Panza, Jr. was a resident of his parents' household on April 2, 1988, and according to the terms of the policy he was a covered person for purposes of underinsured motorist insurance even though the accident did not involve a covered vehicle.
The business policy that was issued provided coverage to Mr. Panza's family through two endorsements. One endorsement states that it "changes the policy" to provide underinsured motorist insurance to "any individual named in this endorsement and his or her family members." (Endorsement A122a.) The policy contains a second endorsement which states that it "changes the policy" and which is entitled "Uninsured Motorist Insurance" (Form A 914). This endorsement indicates that the policy provides uninsured and underinsured motorist insurance to "you or any familymember" (emphasis added).
Endorsement A914, on the second page, also contained the following policy language:
 "Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, the most we will pay for all damages resulting from any one accident is the limit of the Uninsured Motorist Insurance shown in the declarations."
CT Page 1353-G
Panza, Sr. testified that at the time this policy was issued his family owned no automobiles. Rather, the family used two cars which were owned by the business as family cars. Panza requested of his insurance agent that his automobile insurance provide "the best" insurance coverage to both his business and his family. (Exhibit 6, Transcript at pp. 467-470.) His family had no other automobile insurance. (Exhibit 6, Transcript p. 468.) Mr. Panza met with his insurance agent and renewed his automobile insurance with Transamerica in August of each year. (Exhibit 6, Transcript at pp. 468-469.) The insurance agent knew Mr. Panza and his family very well as both a friend and a business; associate. (Exhibit 6, Transcript at p. 469.) Mr. Panza made it clear to his agent that he wanted the "best insurance" available for his family and his business. Exhibit 6, Transcript at p. 470.)
Mr. Panza testified that before the two cars were owned by the business they had been owned and insured by the family as family cars. (Exhibit 7, Transcript at p. 509.) The same insurance agent, who was familiar with the Panza family and business, wrote the policy when the cars were owned by the family and when they were later switched to ownership by the business. (Exhibit 8, Transcript at p. 463-464.) Mr. Panza stated that at the time the ownership of the cars were changed from the family to the business he expected his automobile coverage for his family to be at least equal to the coverage which the family had before the ownership was changed. (Exhibit 7, Transcript at p. 510.)
Mr. Panza paid separate premiums which appeared to have been in the total amount of $78. There is some evidence that Mr. Panza requested the additional coverage because his primary concern was about the absence of liability coverage if either he or his wife operated a non-company-owned automobile without having personal liability coverage.
DISCUSSION
The court's real problem in the instant matter is that it is faced with two clear lines of case law and a fact pattern which falls somewhere in between those lines of Connecticut cases. On the one hand, stacking of uninsured motorist insurance coverage has been firmly established in the law of Connecticut for twenty years in the family setting. Roy v.Centennial Insurance Co., 171 Conn. 463, 475 (1996); Pecker v. Aetna,171 Conn. 443, 451-452 (1976); Safeco v. Vetre, 174 Conn. 329, 333-335
(1978); Nationwide v. Gode, 187 Conn. 386, 394-97 (1987); Allstate v.Ferrante, 201 Conn. 478, 484-88 (1986); Nicolletta v. Nationwide,211 Conn. 640, 645-46 (1989). Cohn v. Aetna, 213 Conn. 525 (1990); CT Page 1353-HCovenant Insurance v. Coon, 220 Conn. 30 (1991). Cohn also makes it clear that the courts have universally rejected attempts to reduce uninsured motorist coverage by explicit policy language with the exception of the narrow reductions allowed by § 38-175a-6 of the insurance commissioner's regulations. Those regulations pertain to the various offsets and do not authorize a specific prohibition on stacking. Cohn. at 528-529.
The second line of cases really begins with Cohn v. Aetna, 213 Conn. 525
(1990), and includes Chmielewski v. Aetna, 218 Conn. 646 (1991) andBroderick v. Insurance Company of North America, 25 Conn. App. 673 (1991). These cases clearly stand for the proposition that the stacking of coverages is not allowed in a business fleet policy.
It appears to the court that the instant case is one of first impression. This was conceded by both counsel at the time of argument on the respective motion. The two cases which appear to at least begin to bridge the gap between the family policy line of cases on the one hand, and the fleet policy line of cases on the other, are Broderick v.Insurance Company of North America, 25 Conn. App. 673 (1991) and Ceci v.National Indemnity Company, 225 Conn. 165 (1993). Ceci contains the following language:
 "By inserting a family member provision in a business policy, the defendant has left the Cecis in the unenviable position of having to define the meaning and purpose of the family member language in the context of the policy. This is precisely the problem that the rules of insurance policy construction were designed to avoid." Ceci, at 175.
In Ceci, the insurance company had claimed that the policy was ambiguous because a corporation cannot have "family members". The Supreme Court rejected that argument holding that any ambiguity should be construed against the party drafting the contact and also holding that "the policyholder's expectations should be protected so long as they are objectively reasonable from the laymen's point of view." Ceci, at 173. Although Ceci is the more recent and higher authority precedent, the matter is perhaps even more fully explored in Broderick v. InsuranceCompany of North America, 25 Conn. App. 673 (1991), when the Appellate Court applied the rationale of Cohn and Chmielewski to a business auto policy which insured but two vehicles. The Appellate Court wrote:
 "The rationale precluding the stacking of fleet insurance policies `is based upon the objectively reasonable expectation[s] of the parties' to the insurance policy. In CT Page 1353-I determining the reasonable expectations of the parties, the court does not view the particular insured and the vehicle involved in isolation but must hypothesize the total amount of coverage necessitated by the plaintiff's claim of stacking. Under the plaintiff's claim therefore we must hypothesize that each covered vehicle will be afforded the same coverage." Broderick, at 675.
In Broderick, the Appellate Court concluded that with respect to a business auto policy which was in effect on April 22, 1989, each of two vehicles had a $500,000 underinsured motorist limit and a separate premium of $29 per vehicle for that coverage. The court concluded that it was reasonable to assume that both vehicles could be on the road at the same time, that if stacking were allowed, each vehicle would have coverage of 2 times $500,000 or $1,000,000, and that therefore $2,000,000 worth of coverage would have been purchased for a total premium of $58. The court went on to hold, as a matter of law, that such an expectation was unreasonable. In the instant case Transamerica Insurance submits that hypothesizing $4,000,000 of uninsured coverage at a premium of $78 on April 2, 1988 is virtually identical to the fact pattern faced by theBroderick court.
While the company understandably urges Broderick on this court, the company candidly admits that the court faces a case of first impression. The distinction between Broderick and the instant case is significant. While the Broderick fleet policy provided coverage for only two vehicles, which were separately described and carried separate premiums, there was no family endorsement. There appears to have been no language in theBroderick policy mentioning family in any manner. The plaintiff there argued that while the prohibition of fleet stacking in the context of the 22 vehicles in Chmielewski reflected the expectation of the parties, the failure to stack the two vehicles in Broderick did not match the expectation of the parties.
However, the Broderick court was not faced with the significant family member provision (i.e., Endorsement A122a and A914), and as a result was not faced with the problem of "having to define the meaning and purpose of the family language in the context of the policy" as amended by those endorsements. It appears that the insured's claims with regards to expectations are at least as strong, if not stronger, in the instant case than they were in Ceci. While Ceci contained family language in an endorsement, the court's opinion does not reflect the extensive concern with family protection which was evidenced by Panza, Sr. in the present case. CT Page 1353-J
The majority in Ceci found that the family language created an ambiguity which it construed against the insurance company. Accordingly, it found that a Ceci family member was covered by the corporate policy even though he was not a passenger in a covered vehicle. In effect, the Supreme Court's holding in Ceci amounted to a finding that the inclusion of family member language in the business policy transformed the business policy to a family policy for purposes of coverage. In the instant case, the fact that the business policy was transformed into a family policy for the purpose of coverage is undisputed. This court faces the problem of whether the business policy was transformed to a family policy for purposes of stacking.
At a minimum, it would appear that Panza, Jr. is entitled to stack if Panza, Sr. or his wife had expectations that were "objectively reasonable from the layman's point of view."
The facts are clear that Panza, Sr. did not want to surrender any family insurance benefits when the vehicles were transferred from the family members to Panza's company. He went out of his way to buy endorsements to accomplish this purpose. It is true that the insurer tried to prevent stacking with explicit policy language. However, Cohn v.Aetna, 213 Conn. 525, has made it clear that our courts have universally rejected attempts to reduce uninsured motorist coverage by explicit policy language with the exceptions of narrow reductions not applicable to this case. Accordingly, the attempt to specifically eliminate stacking by policy language is ineffective under Connecticut law.
It is a fact that the specific prohibition has some bearing on the insurer's intention, and, perhaps, should have had some bearing on the insured's expectation. Nevertheless, on balance, it would appear that the expectation of Panza, Sr. that his family had the full benefits of uninsured motorist protection are at least as reasonable as the expectations of Ceci that family members were covered by a business policy. While recognizing that the instant case is one of first impression, the court finds the facts in favor of Panza to be somewhat stronger on the question of expectation than the facts in favor of Ceci. Having found that, the court applies the rationale of the 1993 Ceci decision and finds no reason to distinguish between Ceci's right to coverage and Panza's right to stack.
Accordingly, the decision of the arbitrators in determining that the available underinsured motorist coverage is in the amount of $2,000,000 is sustained. CT Page 1353-K
THE COURT:
BY ___________________ KEVIN E. BOOTH, JUDGE