[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION: MOTION TO CONFIRM ARBITRATIONAPPLICATION TO VACATE ARBITRATORS' DECISION
In 1989, Farmington Casualty Company (Farmington) issued a "contractor's commercial insurance policy" to Raymond Goduto. The policy, which was in force from October 31, 1989 to October 31, 1990, provided the following types of coverage: (1) building and personal property coverage; (2) commercial general liability coverage; and (3) commercial automobile coverage, with liability and uninsured/underinsured motorist coverage in the amount of $300,000.00. Goduto insured two motor vehicles under this policy.
On August 20, 1990, Goduto was operating one of these vehicles when he was struck by a vehicle operated by Jasbir Kumar. As a result, Goduto sued Kumar. In 1993, the suit was settled for $100,000.00, the full amount of liability coverage available under Kumar's policy.
On February 9, 1994, Goduto filed an application for an order to proceed with arbitration for underinsured motorist benefits. The order was granted by the court, Vertefeuille, J., on March 28, 1994. On October 23, 1995, a majority of the arbitrators found that there was underinsured motorist coverage in the amount of $600,000.00, and awarded Goduto $425,000.00, less the $100,000.00 paid by Kumar's insurer and $5,000.00 of no-fault CT Page 4745 benefits paid by Farmington, for a net recovery of $320,000.00. The dissenting arbitrator found that the policy provided for a maximum of $300,000.00 of underinsured motorist coverage. The dissenting arbitrator found that the policy in question was a commercial fleet insurance policy, and therefore, stacking of benefits was prohibited. The dissenting arbitrator further found that even if the policy was issued to Goduto in his individual capacity, there was no evidence that separate premiums were paid for underinsured motorist benefits for each vehicle, and that the policy specifically prohibited stacking. Thus, the dissenting arbitrator concluded that there was no objectively reasonable expectation that the policy would provide a maximum of $600,000.00 of underinsured motorist coverage.
I.
"[W]here judicial review of compulsory arbitration proceedings required by [General Statutes § 38a-336] is undertaken . . . the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators." Bodner v. United Services Automobile Assn.,222 Conn. 480, 486, 610 A.2d 1212 (1992), quoting American UniversalIns. Co. v. DelGreco, 205 Conn. 178, 191, 530 A.2d 171 (1981). See also Aetna Life Casualty Co. v. Bulaong, 218 Conn. 51, 58,588 A.2d 138 (1991). "Factual findings of an arbitration panel considering underinsured motorist coverage are subject to de novo review by the courts using a substantial evidence standard of judicial review." Rydingsword v. Liberty Mutual Ins. Co.,224 Conn. 8, 21, 615 A.2d 1032 (1992).[1]
In reviewing the insurance policy at issue, the court is guided by the principle that "`[a]n insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy.' " Stephan v. Pennsylvania General Ins.Co., 224 Conn. 758, 763, 621 A.2d 258 (1993). "Under well established rules of construction, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." Id.
II.
In support of its motion to vacate, filed on November 22, 1995, Farmington argues that the arbitrators incorrectly CT Page 4746 permitted stacking of underinsured motorist benefits in a commercial fleet automobile policy which carried an endorsement that specifically disallowed stacking. Farmington contends that during the arbitration proceeding, Goduto failed to present evidence that individual premiums were paid for underinsured motorist coverage for each vehicle and no evidence was presented as to whether it was objectively reasonable for Goduto to expect $600,000.00 of underinsured motorist coverage based on the premium charged and the language contained in the policy. Farmington further argues that the arbitrators' award was excessive.
In support of his motion to confirm, filed on December 11, 1995, Goduto argues that he was covered under the policy as "an individual," and not as a commercial entity. Goduto further argues that prior to 1994, all insurance policies allowed stacking, and that each vehicle insured under the policy had underinsured motorist coverage of $300,000.00 per occurrence.
Because the policy at issue was in effect from October 1989 through October 1990, and the collision between Goduto's vehicle and the underinsured vehicle occurred on August 20, 1990, the pre-1994 rules which permitted stacking apply to the present case.[2] "Intrapolicy stacking is the aggregation of the limits of liability for uninsured motorist coverage of each automobile covered under one insurance policy. Nationwide Ins. Co. v. Gode,187 Conn. 386, 388-89 n. 2, 446 A.2d 1059 (1982). This court has permitted intrapolicy stacking where each of several vehicles insured pursuant to one policy was separately described and individual premiums were charged for uninsured motorist coverage of each vehicle. See, e.g., Dixon v. Empire Mutual Ins. Co.,189 Conn. 449, 453, 456 A.2d 335 (1983); Nationwide Ins. Co. v. Gode,
supra, 394-97; Safeco Ins. Co. v. Vetre, 174 Conn. 329 333-35,387 A.2d 539 (1978). While [§ 38a-336] does not expressly address stacking, we have repeatedly held that the statute does not prohibit aggregation of coverage. Cohn v. Aetna Ins. Co.,213 Conn. 525, 529, 569 A.2d 541 (1990)." Curran v. Aetna Casualty Surety Co., 222 Conn. 657, 669, 610 A.2d 1198 (1992).
"The rationale behind permitting stacking derives in large part from the reasonable expectations of the parties to the contract.
"`[W]hen the named insured purchases uninsured motorist coverage on more than one automobile, he intends to buy extra CT Page 4747 protection for himself and his family, regardless of whether his injury occurs in any one of his insured vehicles or elsewhere.'" [Cohn v. Aetna Ins. Co., supra], 529-30. . . ." Id., 669-70.
"The notion of `stacking' as an objectively reasonable expectation of the parties does not, however, extend to fleet insurance contracts. In using the phrase `fleet insurance contracts' we specifically refer to any insurance policy designated as a `fleet' or `garage' policy, or any insurance policy covering a number of vehicles owned by a business, a governmental entity, or an institution. See 25 A.L.R. 4th 896 (1983)." Cohn v. Aetna Ins. Co., supra, 213 Conn. 530. "`It is obvious that an individual who applies for and receives a liability policy covering his two automobiles would expect to collect the coverage he paid for on both automobiles if anything happened to him or a member of his family. On the contrary, it is not credible that a company or an employee of a company having a fleet of . . . vehicles would reasonably expect the coverage on the vehicle the employee happened to be occupying at the time of the collision with an uninsured [or underinsured] motorist to be [a multiple of the total number of vehicles in the fleet] . . . . '" (Citation omitted.) Id., 530-31.
A.
The court will first address the issue of whether the policy in question was a "fleet" insurance policy. If the policy was a "fleet" policy, then the stacking or aggregating of underinsured motorist benefits would not be available.
The phrase "fleet insurance" policy specifically refers to "any insurance policy designated as a `fleet' or `garage' policy, or any insurance policy covering a number of vehicles owned by a business, a governmental entity, or an institution. . . ." Id., 530. Several vehicles owned and insured by an individual doing business as a sole proprietorship may constitute vehicles which are covered by a fleet insurance policy. Chmielewski v. AetnaCasualty Surety Co., supra, 218 Conn. 669. "Although stacking has been applied to a variety of circumstances . . . it has not been extended to business automobile liability policies that constitute fleet insurance contracts." (Citations omitted.)Broderick v. Ins. Co. of North America, 25 Conn. App. 673, 675,596 A.2d 18 (1991).
The policy issued by Farmington to Goduto is not expressly CT Page 4748 designated as a "fleet" or "garage" policy. The policy is designated as a "contractors insurance" policy. The policy was issued to "Raymond Goduto d/b/a G S Construction Co.," for the purpose of insuring two vehicles that were used by Goduto in conjunction with his construction business, as well as for the purpose of providing, inter alia, business property coverage and commercial general liability coverage. (Insurance policy, General Declarations Section, p. 1, submitted as an exhibit by both parties.) While the policy purports to be a commercial or business insurance policy, it also states that the "named insured is individual," and that it covers "you" (i.e., Goduto) and Goduto's family.
In Broderick v. Ins. Co. of North America, the plaintiff argued that although the policy at issue was a business automobile liability policy, the policy was not a fleet policy because it covered only two vehicles. The court concluded that "the outcome of this case does not turn on the specific number of vehicles insured . . . . " Id., 675. Thus, in the present case, the fact that only two vehicles were insured is not dispositive of whether the policy in question was a fleet policy. "[P]roperty owned by an individual in a trade name is nonetheless owned by [the individual]. . . . [O]ne who operates a business under a trade name is nonetheless an individual insured under a policy issued in that trade name . . . ." Chmielewski v. Aetna Casualty Surety Co., supra, 218 Conn. 668. The term "owned" as used in the phrase' owned by a business" is not "a term of art referring to the location of the legal title to the vehicles in question. . . ." Id., 669. Thus, where the vehicles are owned by an individual doing business as a sole proprietorship, they may nevertheless fall under the definition of a fleet insurance contract. Id.
Upon review, the court concludes that there is substantial evidence in the record to support the dissenting arbitrator's conclusion that the policy issued to Goduto was a commercial fleet insurance policy. Furthermore, the law with respect to these types of policies, as set forth in Chmielewski andBroderick, supports the dissenting arbitrator's conclusion. Thus, the majority decision is erroneous as a matter of law. Therefore, as a matter of law and fact, the policy in question is a fleet insurance policy, under which stacking of underinsured motorist benefits is not available.
B.
CT Page 4749
The majority decision would be erroneous as a matter of law even if the policy issued to Goduto was an individual policy (as opposed to a commercial fleet insurance policy). The insurance policy issued to Goduto lists two vehicles, a Toyota truck and a Chevy truck. The coverage information for each vehicle is listed in two separate "coverage information" sections of the policy. The first "coverage information" section states that the Toyota has uninsured motorist coverage in the amount of $300,000.00 per accident. The second "coverage information" section states that the Chevy has uninsured motorist coverage in the amount of $300,000.00 per accident. Thus, each vehicle is separately described and the coverage granted under the policy is separately listed for each vehicle.
Three factors must be considered when determining whether stacking is available under an insurance policy: (1) whether each of the insured vehicles is separately described under the policy; (2) whether the coverage granted under the policy is separately listed; and (3) whether a separate premium is charged for the coverage afforded to each of the described vehicles. Cohn v.Aetna Ins. Co., supra, 213 Conn. 530. "`Where two premiums are paid for two vehicles, whether in one policy or two, total coverage for the named insured is doubled since a person can reasonably expect double coverage when he pays double premiums.'Yacobacci v. Allstate Ins. Co., [33 Conn. Sup. 229, 231,372 A.2d 987 (1976)]." Nationwide Ins. Co. v. Gode, 187 Conn. 386, 396446 A.2d 1059 (1982). "In all of our cases upholding the right of the insured to stack underinsured motorist coverage . . . the policyholder had paid a separate, additional premium for the additional coverage." Kent v. Middlesex Mutual Assurance Co.,226 Conn. 427, 436, 627 A.2d 1319 (1993).
While each vehicle owned by Goduto was separately described under the policy and the coverage for each vehicle was separately listed, there is no evidence that a separate premium was paid for underinsured motorist coverage for each vehicle so as to create a reasonable expectation of the availability of $300,000.00 of underinsured motorist benefits per vehicle (or stacked benefits in the amount of $600,000.00). Rather, the evidence demonstrates that Goduto paid a single premium for the underinsured motorist coverage that was available under the policy.
Thus, because Goduto paid only a single premium and because the policy was a commercial fleet insurance policy, it is not CT Page 4750 objectively reasonable for Goduto to expect that aggregated underinsured motorist benefits would be available under the policy.
The majority decision of the arbitration panel is accordingly vacated.
Grogins, J.