[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Nationwide Mutual Insurance Company ("Nationwide") has applied to vacate an arbitration award arising out of the uninsured motorist ("UM") provisions of two automobile insurance policies which it issued. The defendant Linda Barre has filed a cross motion to confirm the award. Nationwide contends that the award should be vacated pursuant to General Statutes § 52-418 (a)(4) in that the arbitrators exceeded their powers or imperfectly executed them in several respects.
Nationwide's first contention is that the arbitrators failed to render the award within thirty days from the completion of the arbitration hearing as required under General Statutes §52-416 (a). It is undisputed that the last day of hearing in the arbitration was March 29, 1996. The award is dated April 16, 1996 and was signed on April 12, 1996 by two of the three arbitrators. The third arbitrator dissented from the award and distribution of the award was held while the majority arbitrators awaited the dissenting opinion, with the intent to distribute both documents to the parties simultaneously. Finally, on May 20, 1996, notice of the award and the award itself were sent to the parties without the dissent, which was to be circulated separately.
General Statutes § 52-416 (a) provides that "[i]f the time within which an award is rendered has not been fixed in the arbitration agreement, . . . the arbitrators . . . shall render the award within thirty days from the date the hearing or hearings are completed . . . An award made after that time shall have no legal effect unless the parties expressly extend the time in which the award may be made by extension or ratification in writing." The language of this statute has been held to be CT Page 6773 mandatory. Marsala v. Valve Corp. of America, 157 Conn. 362,368-70, (1969); Carr v. Trotta, 7 Conn. App. 272, 275, cert. denied, 200 Conn. 806 (1986). Notice of the award must also be given within the thirty day period. Hayes v. Travelers IndemnityCo., 26 Conn. App. 418, 421 (1992). Clearly, notice of the award and the award itself were not given within the thirty day statutory limit. However, the defendant claims that the plaintiff waived the timeliness of the award and notice by failing to raise the issue prior to the issuance of the award and notice.
Our Supreme Court has stated, "[w]e have made it clear that we will not permit parties to anticipate a favorable decision, reserving a right to impeach it or set it aside if it happens to be against them, for a cause which was well known to them before or during the trial." (Citations omitted; internal quotation marks omitted.) Bowman v. 1477 Central Avenue Apartments, Inc.,203 Conn. 246, 251-2 (1987). This principle was applied to an arbitration award in AFSCME v. New Britain, 206 Conn. 465 (1988), where the court held that the plaintiffs' failure to raise the issue of timeliness prior to the rendering of an arbitration award constituted a waiver of the late filing of the award. In that case, like the present one, the timeliness of the award was not challenged until after the award was rendered. The Supreme Court upheld the finding of waiver. Similar rulings have been upheld in other arbitration matters. See, e.g. Capozzi v. LibertyMutual Fire Insurance Co., 32 Conn. App. 250 (1993). Nationwide seeks to distinguish the AFSCME case by pointing out that the arbitration award in that case was entered pursuant to a different statute. That distinction, however, did not affect the outcome or reasoning of the case.
The thirty-day filing period for the arbitration award in the case expired on April 28, 1996. The award was not distributed to the parties until May 20, 1996. During the intervening weeks, Nationwide knew that the award, when filed, would be untimely, yet Nationwide failed to raise the issue. Only after receiving and reviewing the award, which is adverse to Nationwide, did Nationwide raise the timeliness issue. The court finds on these facts that Nationwide waived any right to object to the untimeliness of the award.
The second issue to be decided is the standard of judicial review to be applied in this case. The parties disagree as to the appropriate standard of judicial review of the arbitration award CT Page 6774 at issue, which decides an issue of coverage under the uninsured motorist ("UM") provision of one of the policies. General Statutes § 38a-336 (c), formerly § 38-175c, provides: "Each automobile liability insurance policy . . . which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceedings." Our Supreme Court has held that this statutory provision makes arbitration of insurance coverage issues compulsory. Bodner v. United Services Automobile Assn., 222 Conn. 480,488 (1992). Judicial review of compulsory arbitration is governed by a standard of de novo review. American UniversalInsurance Co. v. DelGreco, 205 Conn. 178, 191 (1987). Accordingly, the court will conduct a de novo review of the coverage questions decided in the arbitration award.
Nationwide contends in its application to vacate the award that the arbitrators exceeded their powers or imperfectly executed them in that they "stacked" UM coverage under a Nationwide business automobile policy. The facts on which this claim is based are not in dispute. On April 9, 1984 the defendant Linda Barre, then age twelve, was riding her horse on Middle Road Turnpike in Woodbury. She was struck by a motorcycle which was negligently operated by Charles Lyons and she suffered personal injuries. Lyons had no liability insurance so the defendant made a UM claim against Nationwide under two policies. The defendant was insured as a resident relative under a policy of automobile liability insurance issued to her parents, Lewis and Patricia Barre, on one vehicle, a 1976 GMC pickup truck. This policy provided UM coverage in the amount of $20,000 per person and $40,000 per occurrence for that one vehicle. Nationwide paid the $20,000 UM coverage on this policy to the defendant.
The second policy is a business automobile policy issued to Meadowbrook Plantation Inc. and Lewis Barre. It provided coverage for five vehicles, also registered to Lewis Barre, with UM coverage of $40,000 per vehicle. Meadowbrook Plantation Inc. operated a garden center. The defendant's mother was an officer and the sole stockholder of the corporation. Her father was a seasonal employee of the garden center. The Barres had seven children, including the defendant, and owned a house and fifty-two acre farm with five horses and two ponies. The UM coverage in the policy was provided by way of endorsement, a portion of which stated:
"Family member" means a person related to you by CT Page 6775 blood, marriage or adoption who is a resident of your household, including a ward or foster child.
The arbitrators found that the predominant use of the vehicles covered by the business auto policy was personal rather than business-related. They further found that the UM endorsement extended UM coverage to Barre family members. The arbitrators concluded that the personal or family related aspects of the policy warranted stacking of the business auto policy, with the result that $200,000 in UM coverage ($40,000 x five vehicles) was available to the defendant. They awarded damages of $120,000 to the defendant.
"Stacking" is the term used to describe the aggregation of UM coverage from two different liability insurance policies or from a single policy which separately lists UM coverage for two or more cars. Nationwide Insurance Co. v. Gode, 187 Conn. 386,388, n. 2 (1982). The Connecticut Supreme Court has recognized both types of stacking. Cohn v. Aetna Insurance Co., 213 Conn. 525,528 (1990). Stacking is based on the objectively reasonable expectation of the parties to an insurance contract. Id., 530. The courts have reasoned that when the named insured purchases and pays for UM coverage on more than one vehicle, he or she intends to purchase additional coverage. Id. When the insured pays two premiums for coverage for two vehicles, total coverage is doubled because double coverage is reasonably expected for double premiums. Id. Stacking therefore is an objectively reasonable expectation of the parties under these circumstances.
In Cohn v. Aetna Insurance Co., supra, however, the Supreme Court held that stacking did not apply to "fleet insurance contracts" because stacking under such policies was not an objectively reasonable expectation of the parties. In Cohn, the plaintiff's wife was severely injured while operating one of twenty-two vehicles owned by a family corporation and insured under a business automobile liability policy. She received the full amount of the tortfeasor's liability policy, $25,000, and then made claim against the UM coverage on the business liability policy, which provided $40,000 UM coverage for each of the twenty-two vehicles. The arbitrators stacked the UM coverage under the business policy, a total coverage of $880,000 ($40,000 x twenty-two vehicles), and awarded the plaintiff $855,000. The trial court granted an application to confirm the award, but was reversed by the Supreme Court. CT Page 6776
The Supreme Court in its decision began by reaffirming its prior rulings upholding the propriety of stacking and noted that those decisions were based on the objectively reasonable expectations of the parties to the insurance contract. The court noted, however, that in the context of a fleet insurance policy, stacking could cause startling results:
In the present case, the arbitration panel multiplied twenty-two vehicles times $40,000 to determine that there was $880,000 in underinsured motorist coverage available to one claimant in one vehicle. This of course would have to mean that there was $880,000 of such coverage for each of the twenty-two vehicles comprising the fleet. This produces the unlikely result that the principals of Joseph Cohn Son, Inc., and Aetna Insurance Company contemplated that Joseph Cohn Son, Inc., was purchasing $19,360,000 worth of uninsured or underinsured motorist coverage for a premium of $73.
Cohn v. Aetna Insurance Co., supra, 213 Conn. 531. The court found that any expectation of such a result was clearly not a reasonable one and, therefore, stacking could not be extended to fleet insurance contracts, which the court defined as "any insurance policy designated as a `fleet' or `garage' policy or any insurance policy covering a number of vehicles owned by a business, a governmental entity or an institution." (Citation omitted.) Id., 530.
Later cases refined further the definition of a fleet policy as established in Cohn. In Chmielewski v. Aetna Casualty SuretyCo., 218 Conn. 646 (1991), the court rejected a claim that the policy in question was not a fleet policy because the vehicles were not owned by the business, but by the individual who operated the business under a trade name. Said the court:
 [T]he question is not whether the named insured is a corporation or a sole proprietorship, but whether stacking is consistent with the rationale underlying the preclusion of stacking for fleet insurance policies as expressed in Cohen v. Aetna Ins. Co., supra. Application of that rationale to the facts of this case leads us to conclude that the policy in question should be viewed as fleet policy.
Id., 669-670. The court stated that an analysis must be done by hypothesizing the total amount of coverage if stacking were CT Page 6777 applied. Finding that stacking in the policy at issue would result in total available coverage of $40.5 million for a total premium of $262, the court concluded that an expectation of that amount of coverage at that price was unreasonable.
The plaintiff in Broderick v. Insurance Company of NorthAmerica, 25 Conn. App. 673 (1991), contended that the policy at issue could not be interpreted as a "fleet" policy because it provided coverage for only two cars. The Appellate Court rejected that contention, stating that the outcome of the case should not depend on the number of vehicles insured, but on the same analysis employed in Cohn and Chmielewski. Stacking the policy at issue would result in coverage of $2,000,000 for a premium of $58, a result the court found unreasonable. Id., 676. Stacking therefore was rejected. There have been no additional appellate cases further defining a fleet policy.
The Nationwide policy at issue in this case arguably is a fleet policy within the definition established under Cohn and later refined by Chmielewski and Broderick. The policy insures five vehicles, at least some of which are used for some business purposes. Two of the five vehicles, the Chevrolet "rack body" and the Ford dump truck, had commercial registrations and were used for business purposes on a limited seasonal basis. However, the two passenger vans, a Dodge and a Plymouth maxi van, were both used for family purposes, including transporting the seven Barre children to and from school. These vehicles and the fifth one, a GMC pickup, all bore combination registrations.
The personal use aspect of this policy is further emphasized by the specific terms of the UM endorsement. The definitions section of the original policy states, "`You' and `your' mean the person or organization shown as the named insured in item one of the declarations." There is no dispute between the parties that the named insureds on this policy are Meadowbrook Plantation, Inc. and Lewis A. Barre. The UM endorsement begins with a statement in bold type, "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." In the definitions section of the endorsement, "family member" is defined as "a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child." Section D.1. of the UM endorsement, entitled, "WHO IS INSURED," reads "You or any family member." Linda Barre was a family member, a daughter, of Lewis Barre, one of the named insureds. Any objective reading of the UM endorsement clearly demonstrates that the defendant Linda CT Page 6778 Barre is insured under the terms of the endorsement. To hold that this policy cannot be stacked under Cohn because it is a fleet policy would render the express language of the endorsement superfluous and meaningless. The existence of this provision in the UM endorsement is a significant factual difference from Cohn and its progeny. There is nothing in Cohn, Chmielowski orBroderick which suggests that stacking of a fleet policy should be prohibited in the face of express policy language which indicates that the claimant is indeed insured under the UM coverage.
The Supreme Court considered the effect of the same language in a UM endorsement in Ceci v. National Indemnity Co., 225 Conn. 165
(1993). The issue in the case was whether the plaintiff, Michael Ceci, was covered by the UM benefits in a business automobile policy issued to a corporation operated by the plaintiff's family. The sole insured on the policy was the family corporation; however, the policy contained the same definition of "family member" as in the Nationwide policy and stated that the insured "or any family member" were covered by the UM insurance. The court found that a UM endorsement to a business policy which stated that "family members" were covered was ambiguous and, in accordance with established rules of construction, would be construed against the issuer of the policy. Id., 173.
 Because corporations do not have families, uninsured motorist endorsements containing family member language should not be appended to business automobile liability insurance policies. If they are, then, in keeping with the consumer oriented spirit of the rules of insurance policy construction, the claimed ambiguity should be construed from the standpoint of the reasonable layperson in the position of the insured and not according to the interpretation of trained underwriters.
(Citation omitted.) Id., 174-75. In conclusion, the court emphasized that it has consistently held that every provision in an insurance contract is to be given effect if it is reasonably possible to do so. Id., 175. The court therefore held that the plaintiff was covered under the UM coverage for "family members."
The family member provision in the UM endorsement to the Nationwide policy, "construed from the standpoint of the reasonable layperson in the position of the insured . . .," clearly indicates that all members of the Barre family are CT Page 6779 covered by the UM insurance in the policy. Id., 175. This provision can be given effect only by employing stacking and by distinguishing Cohn, where the policy in question did not contain such a family member provision. The arbitrators' award employing stacking must be upheld because of the family member provision in the UM endorsement. (The court notes that a similar analysis was employed in Transamerica Insurance Co. v. Panza, superior court, judicial district of New Haven at New Haven, Docket No. CV95-0381407S (February 28, 1996), where the court found that the inclusion of a family member provision in a UM endorsement transformed a business auto policy to a family policy.)
The application to vacate the arbitration award is denied. The motion to confirm the arbitration award is granted.
VERTEFEUILLE, J.