[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 2621
The defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") has filed and argued a motion for summary judgment. National Union was the insurer of a fleet of automobiles owned by the Cumberland Farms, the employer of the plaintiff Wendy McDonald. National Union posits that Cumberland Farms had effectively elected the minimum statutorily required uninsured/underinsured motorist coverage, which in Connecticut is $20,000/$40,000. Because the alleged tortfeasor, one Janice Schofield, carried $20,000/$40,000 in automobile liability coverage, there is no available UM/UIM coverage, according to National Union. Additionally, any coverage limit also has to be reduced by the amount of workers' compensation benefits pain: at this point, more that $150,000 in workers' compensation benefits has been paid. Accordingly, according to National Union, there is no coverage available and summary judgment ought to be granted in its favor.
The plaintiff counters with a variety of arguments, which fall into two general categories. As a background for both, the automobile liability coverage has a policy single limit of $2,000,000. First, it is claimed that the insurance arrangement was plagued with irregularities such that any attempt to reduce the UM/UIM coverage to the statutory limit was necessarily ineffective. Second, it is claimed that the manner and method of the attempt to reduce coverage was ineffective. As a result, it is argued, the "equality" provisions of § 38a-336 of the General Statutes compel the result that the UM/UIM coverage is the same as the liability coverage, which in this case is $2,000,000. If this is the case, of course, the limit has not been exhausted by workers' compensation payments and the limit is greater than the alleged tortfeasor's liability policy.
Summary judgment should be granted "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a mailer of law." Section 17-49 of the Practice Book. A material fact is one which will make a difference in the result. Barrett v. SouthernConnecticut Gas Company, 172 Conn. 362, 378 (1977). The movant has the burden of showing the absence of a genuine issue, and the evidence is to be viewed in the light most favorable to the nonmoving party. Hammer v.Lumberman's Mutual Casualty Company, 214 Conn. 573, 578 (1990). If the moving party successfully sustains its burden, the opposing party has the burden of presenting evidence to show that there is a genuine issue. It is not enough to state in conclusory fashion that an issue exists. Dailyv. New Britain Machine Comnany, 200 Conn. 562, 568 (1986). The motion should be granted if a verdict would be directed on the same evidence.Batick v. Seymour, 186 Conn. 632, 647 (1984). CT Page 2622
Both parties have submitted extensive documentation to support their positions. Most of the facts are not disputed, although the consequences of many of the facts are in dispute. At all times relevant, the plaintiff Wendy McDonald was an employee of Cumberland Farms. On about May 15, 1998, she received a car owned by Cumberland Farms for her use. The car was part of a fleet which Cumberland Farms insured through a policy with National Union.[1] At the time she received the car, a commercial fleet policy with effective dates of April 1, 1998, through April 1, 1999, was in effect. The stated liability coverage was $2,000,000 single limit for a premium of $518,207. Uninsured and underinsured motorist coverage was included for no additional premium; the stated limit for both coverages was "minimum statutory".
On September 24, 1998, one John Shankey, a risk manager for the insured Cumberland Farms signed a document which requested the statutory minimum UM/UIM coverage, and included some of the language mandated by §38a-336 (a)(2) of the General Statutes. The paper trail, supported by affidavits, indicates that this election was forwarded by a representative of Willis Corroon, Cumberland Farms' agent, to AIG Risk Management on November 2, 1998. The latter entity, part of the AIG business group which also included the defendant National Union, provided support services to National Union. In any event, it is abundantly clear from a reading of the many documents and affidavits that it was the clear intention of Cumberland Farms, National Union and all of the agents and intermediaries that the fleet policy in question carried um/UIM limits of $20,000/40,000. The plaintiff has submitted no evidence to the contrary.
In any event, the policy was renewed for the policy year April 1, 1999, to April 1, 2000. The liability coverage was again $2,000,000 single limit; the UM/UIM coverage limit was again "minimum statutory." The premium was considerably less: $127,459. It is not entirely clear why the premium was so reduced, but the possible reasons in the context of commercial insurance are legion, and include as possibilities a reduction in the number of cars covered and, more likely, a change in the structure of the agreement.[2] I do not believe that the reason for the reduction in premium matters in the least: again, it is perfectly clear that Cumberland Farms, National Union and all involved in the chain specifically intended the UM/UIM limits to be the statutory minimum, and there is no ambiguity suggested by any of the rather formidable materials submitted by the parties.
On June 23, 1999, the plaintiff Wendy McDonald was regrettably involved in a motor vehicle accident while she was operating the insured vehicle. The appropriate compensation for injuries suffered in the accident far exceed the alleged tortfeasor's liability coverage. The alleged CT Page 2623 tortfeasor has a liability policy limit of $20,000, which apparently has been offered. Additionally, more than $150,000 has been paid in workers' compensation benefits.
On the surface, then, the situation is eminently straightforward and summary judgment should be granted without a doubt. Strict adherence to the procedures mandated by § 38a-336 (a)(2) in order to reduce UM/UIM coverage simply is not required in the context of commercial fleet insurance. Frantz v. United States Fleet Leasing, Inc.,[3] 245 Conn. 727,738-743 (1998), arose in the context of a factual situation which lacked literal compliance with statutory provisions then in effect and which included a cast of agents and intermediaries. Frantz held that the strict procedures simply did not apply to commercial fleet policies, in large measure because "commercial fleet insurance gives rise to a significantly different set of expectations and considerations than does personal automobile insurance." Id., 741-42.
This result is entirely consistent with other decisions in the context of commercial fleet insurance. "Stacking", for example, did not occur in the context of commercial fleet insurance at a time when it did apply to intrapolicy coverages in personal insurance. Chmielewski v. AetnaCasualty Surety Co., 218 Conn. 646, 671 (1991); Cohn v. Aetna InsuranceCo., 213 Conn. 525, 530 (1990). In Wilson v. Security Insurance Co.,213 Conn. 532, 538 (1990), the Supreme Court stated that the statutory provisions only required the coverages consistent with the minimum liability coverages, and thus gave rise to a reasonable expectation of only those limits. See also Cohn, supra, 530-31.
Similarly, the Appellate Court considered the issue of the waiver of the "equality" provisions of liability and UM/UIM coverages in the recent case of Boynton v. New Haven, 63 Conn. App. 815 (2001). The city of New Haven was self-insured, and, at the time in question, apparently no written request had been made to reduce UM/UIM coverage to the statutory minimum. There was, however, evidence that the intent of the city was to provide only the minimum required by law. The Appellate Court held that it was not the legislative intent to require the city to ask itself to reduce its limit of coverage, and that its declared amount of coverage was effective.
A theme underlying the decisions in the area of the election of reduced coverage in the fleet context is that the individual employee/driver does not have the power to determine coverage limits in any event. The decisions regarding commercial coverage limits are generally made by professionals who have a degree of sophistication in such matters. The courts have consistently not required that such professionals follow the procedures mandated in the reduction of policy limits in personal CT Page 2624 insurance policies in order for the reductions to be effective; in some situations, no formal request at all has been required where the intent is clear. If adherence had been precise in this case, for example, it is absolutely clear that the result would have been the same in any event, and the plaintiff herself would have had no input whatever into the election of the amount of coverage. The situation is entirely different, of course, in the field of personal insurance, where the insured individual has the ability, with some limitations, to select the level of UM/UIM coverage. The legislative intent is clear in the area of personal insurance that the choice is to be made in an informed and intelligent manner, and thus the requirements are quite stringent. It may be significant that the appellate courts of the state have for approximately a decade held that the same requirements do not apply to commercial fleet policies, and there has been no legislative response.
If the effective UM/UIM coverage in the instant case is $20,000/40,000, there appears to be no dispute whether the car in question is underinsured: it is not. Because the uninsured/underinsured limit is the same as the liability coverage of the alleged tortfeasor, the vehicle is not underinsured. See § 38a-336 (e) of the General Statutes; Covenant insurance Co. v. Coon, 220 Conn. 30, 37-38 (1991). Also, it is clear from the policy submitted in connection with the motion that coverage is to be reduced by the amount of workers' compensation benefits paid; such reduction is authorized by regulation and case law. See Rydingsword v. Liberty Mutual, 224 Conn. 8 (1992).
The plaintiff has, however, suggested that a number of features vitiate the arrangement intended by the employer, the insurer and its agents. The approach has been a shotgun effort to find claimed irregularities and illegalities. I have carefully examined each piece of evidence submitted by the plaintiff and I find no such fatal shortfalls. Perhaps equally importantly, I have found no authority to support the proposition that even if there are irregularities,[4] the consequence is to afford $2,000,000 in coverage to the plaintiff.
A primary contention of the plaintiff is that Cumberland Farms has in effect self-insured up to a $500,000 limit[5]. It is apparent from the materials that National Union was responsible to the plaintiff for UM/UIM benefits up to the coverage limits of $20,000. It is also apparent, either expressly or by inference from the facts submitted, that Cumberland Farms was responsible to National Union for repayment, or perhaps up front payment, of the amounts to be paid to claimants, undoubtedly to limits exceeding the amount of $20,000. Because Cumberland Farms bore the ultimate financial burden of the first tier or level of payments, the claims adjusters reported at some level to Cumberland Farms, whose employees or agents "called the shots" at least as to the CT Page 2625 initial levels of payments. It also may be that because of the fact that the ultimate financial burden of payments, at least at the lower levels, Thus on Cumberland Farms, it has the ability to select defense attorneys who are responsible, at least to a degree, to it. Assuming all of this to be true, I do not see how a genuine issue of fact is created to defeat the granting of the motion for summary judgment.
I have read all of the evidence and the authority submitted by the plaintiff and I find no factual basis for the claims of impropriety. For example, there surely is no prohibition against the hiring of claims adjusters outside the employ of the specific insurance company on the risk.[6] There surely is no prohibition against a commercial insured's bearing the financial burden for claims in one degree or another; if there were, many of the large commercial policies would be unlawful. There can surely be no prohibition against attorneys "reporting to" or being hired by the party bearing the financial risk.[7] I further don't immediately see how any of these claimed irregularities could affect the policy limit.
The plaintiff also suggests that the request for the reduction of coverage was ineffective because Cumberland Farms was, at the $20,000/40,000 level, effectively a self-insured. It may well be, as suggested above, that there was an arrangement in effect such that Cumberland Farms ended up paying for such claims. Yet there is no suggestion that, regardless of the specifics of the arrangement[8], the clear and unequivocal intent of the insurer and the insured was anything other than to provide coverage equal to the statutory minimum. I do not see bow a result of the insured's paying, one way or another, the amount of the minimum coverage has any effect on the effectiveness of the election of coverage. And, as indicated above, our appellate courts have consistently held that the specific requirements of § 38a-336 (a)(2) do not strictly apply to commercial fleet policies.
In conclusion, the plaintiff has not submitted facts which create a genuine issue as to the effective amount of coverage. I have carefully examined each of the claims of impropriety, and I do not find that any is substantiated by any evidence. The evidence does suggest only a complex, but fairly typical, structuring of commercial fleet insurance and its administration. For better or for worse, the individual employee/driver simply does not have any input into the structuring. There has been no evidence of any unfair practice which has any impact on the handling of the plaintiff's specific claim. The motion for summary judgment is granted and judgment shall enter in favor of the defendant.
Beach, J. CT Page 2626